1
2
3
4

IN THE UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6
7

LOUIS OLIVEREZ, JR.,                          )

8
                                Petitioner,   )        No. C 05-0186 CRB (PR)
9                                             )
                vs.                           )        ORDER DENYING PETITION
10                                            )        FOR A WRIT OF HABEAS
        C. M. HARRISON, Warden,               )        CORPUS
11                                            )
                                Respondent.   )
12      _____       )

13

14          Petitioner, a state prisoner incarcerated at California State Prison, Los

15   Angeles County, has filed a pro se petition for a writ of habeas corpus under 29

16   U.S.C. § 2254 claiming instructional error and ineffective assistance of appellate

17   counsel.

18                          **STATEMENT OF THE CASE**

19          A jury in the Superior Court of the State of California in and for the

20   County of Santa Clara found petitioner and his co-defendant Adam Leroy Caris

21   guilty of conspiracy to commit murder and first degree murder.  The jury also

22   found petitioner guilty of grand theft and found true allegations that Caris had

23   suffered a prior serious felony conviction and served three prior prison terms for

24   purposes of sentence enhancements.  On March 6, 1998, the trial court sentenced

25   petitioner to 25 years to life and Caris to 25 years to life plus seven years.

26          On May 31, 2002, the California Court of Appeal, Sixth Appellate

27   District, affirmed the judgment of the trial court.  On August 21, 2002, the

28   Supreme Court of California denied review.

1    Petitioner then unsuccessfully sought collateral relief from the state courts.

2    On September 3, 2003, his petition for a writ of habeas corpus was denied in a

3    reasoned opinion given by the Santa Clara County superior court. The petition

4    was subsequently denied by the California Court of Appeal on January 14, 2004

5    and the Supreme Court of California on December 1, 2004.

6    On January 12, 2005, petitioner filed this instant federal petition for a writ

7    of habeas corpus under 28 U.S.C. § 2254.  Per order filed on April 15, 2005, the

8    court found that the petition, when liberally construed, stated cognizable claims

9    under § 2254 and ordered respondent to show cause why a writ of habeas corpus

10   should not be granted.  Respondent filed an answer on June 14, 2005.  Petitioner

11   filed a traverse on July 13, 2005.

12                              **FACTUAL BACKGROUND**

13   The California Court of Appeal summarized the facts of the case as

14   follows:

15   On September 27, 1993, at 2:21 a.m., San Jose Police
     Officer Bridgette Blahut found the body of Paul Farfan in Watson
16   Park.  Farfan had been shot five times.  Farfan was a drug dealer
     and member of the Northern Structure, a prison and street gang
17   subsidiary of the Nuestra Familia prison gang.  Farfan's parole
     officer told police officers that Farfan's girlfriend was Jessica
18   Salazar.  Officers traced her to the Arena Hotel where Oliverez,
     Jeannette Alarcon (Oliverez's wife), and another person were also
19   staying.  Officers found Farfan's pouch inside Alarcon's purse.
     Inside the pouch were two guns, ammunition, and a small amount
20   of methamphetamine.  Officers found a large amount of dust on
     Alarcon's Geo Prizm automobile that was consistent with the dirt in
21   Watson Park.  They also found Caris's fingerprints in three places
     on the car.  The car's tire tread pattern was consistent with patterns
22   near the crime scene.  A bloodstain on the seat of the car was
     consistent with Farfan's blood.  A dent in the door frame was
23   consistent with the bullet strike.  In the trunk, officers found two
     pairs of bloodstained athletic socks that were similar to socks
24   belonging to Oliverez, a pair of Reebok shoes with bloodstained
     shoelaces, and a pair of Nike shoes.  The sizes of the shoes were
25   different and consistent with the different sizes worn by Oliverez
     (the Reebok shoes) and Caris (the Nike shoes).  Police found a
26   paper in the car that had Farfan's telephone number written on it
     and another paper that had Caris's address written on it.

27

28                                         2

1

2

3

4

        Oliverez told police that, between 11:00 p.m. and midnight
on the night of the murder, he had borrowed Alarcon's car, driven
to Farfan's brother's home, picked up Farfan, and drove to Watson
Park to drink and talk.  He added that he and Farfan stayed in the
park for 20 minutes and, afterward, he drove to an apartment,
dropped off Farfan, and returned to the Arena Hotel.

5

6

7

        Robert Romero told the police that Caris had told him that
he, Caris, had shot Farfan five times after he, Caris, and Oliverez
had set Farfan up to be killed.  Jesus Avila testified that Caris had
told him in jail that he, Caris, had killed Farfan because Farfan was
disrespecting Jerry Salazar by "messing with" with [sic] Salazar's
wife.

8

9

10

11

12

13

14

15

16

        Caris was a member of the Northern Structure.  Oliverez
was either a member or sympathizer of the gang.  The People's
theory was that Farfan's murder was a "gang hit" that was ordered
by Chente Arroyo because Farfan and Manuel Nanez had spent
drug profits instead of sending the profits to incarcerated gang
members.  Arroyo was under a murder indictment with other
members of the Northern Structure.  He was the highest ranking
Nuestra Familia  and Northern Structure member in custody.  The
Grand Jury agreed with the People's theory and the indictment
alleged that Oliverez and Caris had committed the murder in
association with a criminal street gang for purposes of 10-year
sentence enhancements.  As a result, at trial, the People introduced
general evidence about the organization and activities of Nuestra
Familia and Northern Structure and specific evidence about the
involvement and activities in gang business of Farfan, Oliverez,
Caris, and others.  The jury, however, found the gang enhancement
allegations not true.

17

        Caris testified in his own defense and related the following.

18

19

20

21

22

23

24

25

26

27

        Caris joined the Northern Structure in 1986 while he was in
prison.  On the evening of the murder, Oliverez called him and
asked whether he wanted to party with Salazar's wife and Farfan.
Caris agreed.  Oliverez picked him up in the Geo Prizm.  Farfan
was in the car.  The three drove to Milpitas.  Oliverez and Farfan
argued in the front seat.  The three encountered police near their
destination and, because Farfan indicated that he possessed a gun,
drove back to San Jose and Watson Park.  Oliverez and Farfan
escalated their argument.  The three got out of the car.  Caris
walked 30 feet away to urinate.  When he turned to walk back to
the car, he saw Oliverez and Farfan struggling.  He then heard a
gunshot and saw a flash.  He heard more shots and saw Oliverez
holding a gun.  Oliverez was pulling Farfan out of the car.  Farfan
called to Caris to help get Oliverez away.  Farfan jumped out of the
car and ran around to the front.  Oliverez followed .  Caris saw the
two on the ground, heard shots, and saw a flash.  Oliverez broke
free, stepped away, and shot Farfan.  Caris started to run away but
Oliverez exclaimed that there had been a green light (murder

28

3

contract) on Farfan because of Farfan's relationship with Salazar's wife. Caris got into the car on the driver's side and crawled to the passenger side. Oliverez drove Caris to his girlfriend's home. Caris cried and told his girlfriend that Oliverez shot Farfan.

Oliverez did not testify in his own defense. After the prosecution's rebuttal case, however, Oliverez testified in surrebuttal. He related the following.

Oliverez and Farfan decided to party on the evening of the murder. Oliverez picked up Farfan in the Geo Prizm. Farfan was carrying a black duffel bag. They drove to Milpitas. They encountered police near their destination and, because Farfan indicated that he possessed a gun, drove back to San Jose and picked up Caris. The three drove to Watson Park. Oliverez exited the car to go urinate. As he walked back to the car, he heard a gunshot. He saw Caris jumping from the driver's side of the car. He heard another shot and saw Farfan run away. Caris chased after Farfan and shot him again. [Caris] came back to the car with a gun in his hand. [Caris] ordered [Oliverez] to drive out of the park. In the car, Caris exclaimed that Farfan "had it coming, fuck with my old lady." Oliverez dropped Caris off at Caris's home and drove to the Arena Hotel. He took Farfan's black pouch into the hotel and left Caris's shoes in the trunk.

People v. Caris, No. H018246, 2002 Cal. App. Unpub. LEXIS 1767, *2-7 (Cal. Ct. App. May 31, 2002).

**DISCUSSION**

A.    Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

4

1    in the State court proceeding." 28 U.S.C. § 2254(d).

2         "Under the 'contrary to' clause, a federal habeas court may grant the writ

3    if the state court arrives at a conclusion opposite to that reached by [the Supreme]

4    Court on a question of law or if the state court decides a case differently than

5    [the[ Court has on a set of materially indistinguishable facts." Williams v.

6    Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,'

7    a federal habeas court may grant the writ if the state court identifies the correct

8    governing legal principle from [the] Court's decisions but unreasonably applies

9    that principle to the facts of the prisoner's case." Id.

10        "[A] federal habeas court may not issue the writ simply because the court

11   concludes in its independent judgment that the relevant state-court decision

12   applied clearly established law erroneously or incorrectly.  Rather, that

13   application must also be unreasonable." Id. at 411.  A federal habeas court

14   making the "unreasonable application" inquiry should ask whether the state

15   court's application of clearly established federal law was "objectively

16   unreasonable." Id. at 409.

17        The only definitive source of clearly established federal law under 28

18   U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme

19   Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331

20   F.3d 1062, 1069 (9th Cir. 2003).   While circuit law may be "persuasive

21   authority" for purposes of determining whether a state court decision is an

22   unreasonable application of Supreme Court precedent, only the Supreme Court's

23   holdings are binding on the state courts and only those holdings need be

24   "reasonably" applied. Id.

25

26

27

28                                          5

B.      Claims

Petitioner presents eights claims for relief to the court.  Petitioner's first claim is that the trial court committed prejudicial error by failing to give a modified instruction for CALJIC 3.18.  Petitioner's seven remaining claims cite ineffective assistance of appellate counsel for failing to raise various issues: (1) the trial court committed a reversible error for failing to sever the trial of petitioner and co-defendant Caris, (2) the trial court abused its discretion by admitting co-defendant's hearsay statement, (3) post trial counsel was ineffective in challenging the verdict based upon insufficiency of the evidence, (4) prosecutorial misconduct based on the prosecution's knowing use of perjured testimony, (5) prosecutorial misconduct based on the prosecution's withholding exculpatory evidence from the defense, (6) prosecutorial misconduct based on the prosecution's knowing presentation of a false theory of guilt based on false testimony, and (7) cumulative error.

1.      Instructional error

Petitioner claims that the trial court erred in limiting CALJIC No. 3.18 in its instructions to the jury.  The trial court instructed the jury in the language of CALJIC No. 3.18 as follows:

> You should view the testimony of an accomplice called as a witness by the prosecution which tends to incriminate a defendant with distrust.  This does not mean that you may arbitrarily disregard the testimony.  You should give that testimony the weight you think it deserves after examining it with care and caution and in light of all the evidence in the case.

People v. Caris, No. H018246, 2002 Cal. App. Unpub. LEXIS 1767, *8 (Cal. Ct. App. May 31, 2002).  Petitioner contends that this instruction was erroneous because although it cautioned the jury to view accomplice testimony with distrust, it limited the testimony to accomplices called as witnesses by the prosecution.  Petitioner claims that because co-defendant Caris testified in his

6

own defense and was not a witness for the prosecution, petitioner was denied the advantage of an instruction to regard Caris's testimony with distrust.

To obtain federal habeas relief for error in the jury charge, petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991). The error may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. Petitioner must also show actual prejudice from the error, i.e., that the error had a substantial and injurious effect or influence in determining the jury's verdict, before the court may grant federal habeas relief. Calderon v. Coleman, 525 U.S. 141, 146 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

A state trial court's failure to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings. Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). The omission of an instruction is less likely to be prejudicial than a misstatement of the law. Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987). A habeas petitioner whose claim involves failure to give a particular instruction, as opposed to a claim that involves a misstatement of the law in an instruction, bears an "especially heavy burden." Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

The California Court of Appeal gave a reasoned opinion denying petitioner's claim of instructional error on direct appeal. The court of appeal determined that the instruction given by the trial court was not a misstatement of the law and the instruction "plainly and correctly said that prosecution accomplice testimony that incriminates should be viewed with distrust." People v. Caris, 2002 Cal. App. Unpub. LEXIS 1767, *12. The court of appeal

7

concluded that petitioner was required to request a broader accomplice instruction if he considered the instruction that was given to be too limited.  In support of its conclusion, the court of appeal cited <u>People v. Box</u>, 23 Cal. 4th 1153, 1209 (2000), where the Supreme Court of California held that a cautionary instruction regarding a co-defendant accomplice is required when requested by the defendant in a case where the co-defendant testifies.  <u>People v. Caris</u>, 2002 Cal. App. Unpub. LEXIS 1767, *11.  The court of appeal determined that because neither petitioner nor his co-defendant requested the broader instruction, the trial court did not err in giving the modified instruction.  <u>Id.</u> at *12.

In order for petitioner to show that the court of appeal unreasonably applied controlling federal law, he must show that the trial court's omission of the broader accomplice-distrust instruction "so infected the entire trial that the resulting conviction violates due process." <u>Estelle</u>, 502 U.S. at 72.  Viewing the jury instructions as a whole within the context of the entire trial record, it is clear that the modified jury instruction given by the trial court did not infect the trial to the degree of violating petitioner's due process rights.  The convictions of both defendants clearly show that the jury did not wholly accept Caris's testimony, and instead viewed his testimony with distrust, as petitioner's broader instruction would require.

Even if the limited instruction was error,  the ample physical and testimonial evidence supporting the prosecution's case against petitioner precludes a finding of prejudice.  Petitioner was found with Farfan's pouch, containing Farfan's gun and drugs.  Farfan's blood was found in the car petitioner was driving on the night of the murder.  Farfan's blood was also discovered in the trunk of the car on shoes in the size petitioner wears.  Prosecution witness John Castaneda testified that petitioner was involved in a conspiracy with Caris to

8

murder Farfan.  Additionally, prosecution witness Robert Romero implicated petitioner in the conspiracy.  It simply cannot be said that the alleged instructional error had a substantial and injurious effect or influence in determining the jury's verdict.  See Calderon, 525 U.S. at 146.  Petitioner is not entitled to federal relief on this claim.  See 28 U.S.C. § 2254(d).

### 2. Ineffective Assistance of Appellate Counsel

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  A defendant must show that counsel's advice fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would have prevailed on appeal.  Miller, 882 F.2d at 1434 & n.9.

Appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by the defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  See Miller 882 F.2d at 1434 (footnote and citations omitted).  Appellate counsel will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he declined to raise a weak issue.  See id.

#### a. Denial of Severance

Petitioner claims ineffective assistance of appellate counsel for failing to raise on appeal the trial court's denial of severance of his case from

9

1    co-defendant Caris.  Petitioner first contends that he and co-defendant Caris
2    presented irreconcilable, antagonistic defenses which posed a danger of jury
3    confusion.  Petitioner asserts that antagonistic defenses of the two defendants
4    "presented the question to the jury of whom they should believe rather than
5    whether either had been proved guilty beyond a reasonable doubt by the
6    prosecution."  Pet. at 32.  According to petitioner, the trial court's denial of
7    severance was an error because it relieved the prosecution of its burden of proof,
8    by allowing the jury to hear and consider defendants' antagonistic defenses.

9        There is a judicial preference for joint trials due to efficiency and the
10    desire to avoid "the scandal and inequity of inconsistent verdicts."  Zafiro v.
11    United States, 506 U.S. 534, 537 (1993).  A judge should grant a severance only
12    if there is a "serious risk that a joint trial would compromise a specific right of
13    one of the defendants or prevent a jury from making a reliable judgment about
14    guilt or innocence."  Id.  However, a denial of severance of co-defendants may
15    prejudice a defendant sufficiently to render his trial fundamentally unfair in
16    violation of due process.  Grisby v. Blodgett, 130 F.3d 365, 370 (9th Cir. 1997);
17    Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir. 1986).  It may also result in the
18    deprivation of the specific constitutional guarantee of the right of confrontation.
19    Id.

20        To prevail on a habeas claim in federal court, petitioner must demonstrate
21    that the state court's denial of the severance motion resulted in prejudice great
22    enough to render his trial fundamentally unfair.  Grisby, 130 F.3d at 370.  In
23    addition, petitioner must show that the failure to sever had a substantial and
24    injurious effect or influence on determining the jury's verdict.  Sandoval v.
25    Calderon, 241 F.3d 765, 772 (9th Cir. 2000) (citing Brecht, 507 U.S. at 637).
26        Severance may be in order when a defendant "shows that a co-defendant's
27
28                                              10

defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes the acquittal of the defendant." United States v. Throckmorten, 87 F.3d 1069, 1072 (9th Cir. 1996).  However, "the mere presence of hostility among defendants or the desire to exculpate himself by inculpating the other does not generate the kind of prejudice that mandates severance."  United States v. Sherlock, 962 F.2d 1349, 1363 (9th Cir. 1992).  Mutually antagonistic defenses amongst co-defendants are not prejudicial per se.  Zafiro, 506 U.S. at 538.  To warrant severance on the basis of antagonistic defenses, co-defendants must show that their defenses are both irreconcilable and mutually exclusive.  See Sherlock, 962 F.2d at 1363.  Even if deprivation of severance may potentially result in prejudice enough to create a constitutional violation, limiting jury instructions will often suffice to cure any risk of prejudice.  Zafiro, 506 U.S. at 538.

In the instant case, the California Court of Appeal gave a reasoned opinion addressing the trial court's failure to sever brought on appeal by petitioner's co-defendant Caris.  The Santa Clara County superior court, reviewing petitioner's habeas claims, adopted the reasoning of the court of appeal and denied petitioner's claim of ineffective assistance of appellate counsel for failure to raise denial of severance as a meritorious claim.  This court will review the court of appeal's reasoning to determine if the superior court's decision was contrary to, or an unreasonable application of, controlling federal law.

The California Court of Appeal noted that, although "conflicting defenses" may be grounds for severance in a criminal trial, that "severance is the exception" and most trials involving multiple defendants result in joint trials.   The court found no error in the trial court's denial of severance because there was no showing that the defendants received an unfair trial as a result of joinder.  The

court noted that the defenses of the two defendants, although antagonistic, were not necessarily mutually exclusive.

> The jury did not have to accept or reject each defendant's theory in total . . . Thus, the jury could have accepted either defendant's assertion that his co-defendant shot Farfan but rejected the secondary claim that the non-shooting defendant was not a conspirator or aider and abettor.  This is apparently what the jury did.

People v. Caris, No. H018246, 2002 Cal. App. Unpub. LEXIS 1767, *19-20 (Cal. Ct. App. May 31, 2002).  The court also noted that limited jury instructions on the prosecution's burden of proof and on the jury's obligation to give separate consideration to each defendant and each charge likely precluded any possible prejudice.  See id. at *20.

Because of the jury was able to consider conspiracy and aider and abettor charges, the state court reasonably concluded that petitioner and co-defendant Caris's defenses were not mutually exclusive and did not warrant severance.  See Sherlock, 962 F.2d at 1363.  The court also reasonably applied Zafiro in determining that the limiting instructions to the jury regarding the prosecution's burden of proof and the separate consideration to be given to each defendant and each charge prevented prejudice sufficient to render petitioner's trial fundamentally unfair.  See 28 U.S.C. § 2254(d).

Petitioner also claims that appellate counsel was ineffective for failing to raise on appeal that the failure to sever caused him to suffer a violation of his right to confront an adverse witness when the prosecution introduced co-defendant's hearsay statement within their questioning of Robert Romero.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right "to be confronted with witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause applies to all "testimonial" statements, including "testimonial hearsay" or out of court

1  statements.  <u>Crawford v. Washington</u>, 541 U.S. 36, 50-51 (2004).

2          In <u>Crawford</u>, the Supreme Court held that an out-of-court testimonial

3  statement may not be admitted against a criminal defendant unless the declarant

4  is unavailable and the defendant had a prior opportunity to cross-examine the

5  declarant.  <u>Id.</u> at 59.  The reliability of such statements, for Confrontation Clause

6  purposes, depends solely upon these two factors.  <u>Id.</u> at 68.  Where

7  "nontestimonial hearsay" is at issue, the states may develop evidentiary rules for

8  its admissibility, including exemption of such statements from Confrontation

9  Clause scrutiny all together.  <u>Id.</u> at 68.

10         In <u>Crawford</u>, the Supreme Court, although not supplying a precise

11  definition of "testimonial," provided some guidance for ascertaining whether

12  evidence is testimonial.  <u>Id.</u> 68.   The Court observed that testimony is "typically

13  a solemn declaration or affirmation made for the purpose of establishing or

14  proving some fact."  <u>Id.</u> at 50-51.  The Court noted that "[a]n accuser who makes

15  a formal statement to government officers bears testimony in a sense that a

16  person who makes a casual remark to an acquaintance does not."  <u>Id.</u> at 51.  The

17  Court also offered three "formulations of [the] core class of 'testimonial'

18  statements":

19          [1] "ex parte in-court testimony or its functional equivalent- that is,
           material such as affidavits, custodial examinations, prior testimony
20          that the defendant was unable to cross-examine or similar pretrial
           statements that declarants would reasonably expect to be used
21          prosecutorially," [2] "extrajudicial statemetnts . . . contained in
           formalized testimonial materials, such as affidavits, depositions,
22          prior testimony, or confessions," and [3] "statements that were
           made under circumstances which would lead an objective witness
23          reasonably to believe that the statement would be available for use
           at a later trial[.]"
24
   <u>Id</u>. at 51-52 (omission in original) (citations omitted).
25
           A <u>Crawford</u> claim is subject to harmless error analysis.  <u>United States v.</u>
26
   <u>Nielson</u>, 371 F.3d 574, 581 (9th Cir. 2004) (post-<u>Crawford</u> case); <u>see also</u> United
27

28                                          13

States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005).  For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the inadmissible evidence had an actual and prejudicial effect upon the jury.  See Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht, 507 U.S. at 637).

The Confrontation Clause claim asserted by petitioner was not addressed on appeal by the California Court of Appeal, nor was it addressed in a reasoned opinion on state habeas review.  When there is no reasoned state court decision on a petitioner's habeas claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The admitted statements, which petitioner claims violated his rights under the Confrontation Clause, were statements made by Caris to Robert Romero. During Romero's testimony, the prosecution played a tape of Romero's statement to the police in which Romero stated that during a trip to Reno, Nevada, Caris told him that he and petitioner had set up Farfan to be killed and that Caris had shot Farfan five times.  RT: 6490.  Following the playing of the tape, Romero testified that Caris did not tell him about the murder and it may have been something he "put together" himself.  RT: 6494- 6495.  Romero also testified that he was under the influence of narcotics during the taped police interview and would have said anything to gain release from prison at the time.  RT: 6491- 6498.  Earlier in the trial, Caris testified that he had a conversation with Romero about his gun, but denied saying that the gun had been used or that he had killed Farfan.  RT:  5871, 5872, 5867.

Caris's statement to Romero, which was admitted into evidence, was not

14

"testimonial hearsay" for the purposes of the Confrontation Clause.  Caris's account of the murder made to Romero were remarks made to a friend, not formal statements made to government officers.  <u>Crawford</u>, 541 U.S. at 51.  In his testimony, Caris told the court that using drugs together was the basis of his relationship with Romero.  RT: 5861-5862.  Caris's statements to Romero, his friend with whom he did drugs with, during a trip to Reno, are not statements that were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  <u>Crawford</u>, 541 U.S. at 51.

Even if Caris's statements to Romero were considered testimonial, petitioner's rights under the Confrontation Clause were not violated by admission of these statements into evidence.  During Caris's testimony, petitioner's attorney questioned Caris about his conversations with Romero and Caris denied ever having admitted the murder of Farfan.  RT: 6409.  As stated in <u>Crawford</u>, the Confrontation Clause does not bar the admission of testimonial hearsay when the declarant appears for cross-examination at trial.  <u>Crawford</u>, 541 U.S. at 59 n.9 (citing <u>California v. Green</u>, 399 U.S. 149, 162 (1970)).  Because petitioner had an opportunity to cross-examine Caris about his statements to Romero, the admission of the statements is not prohibited by the Confrontation Clause.

Petitioner's claims of ineffective assistance of appellate counsel relating to counsel's failure to raise the trial court's denial of severance are without merit.  In order for petitioner to prevail on his ineffective assistance of appellate counsel claims, he must establish that appellate counsel's performance was deficient and fell below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S. at 688.  Petitioner must also show that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  <u>Id.</u>; <u>Miller</u>,

15

882 F.2d at 1434 & n.9.

Because denial of severance by the trial court did not render petitioner's trial fundamentally unfair or violate his confrontation rights, petitioner's appellate counsel was not unreasonable for failing to bring these issues on appeal. Under controlling federal law, petitioner's assertion that the trial court erred in denying severance was a weak claim, unlikely to be meritorious on appeal. The weeding out of weaker issues is recognized as one of the hallmarks of appellate advocacy. See Miller 882 F.2d at 1434. Appellate counsel's failure to raise a weak issue frequently will fall within an objective standard of competence, and cause his client no prejudice. Id. Petitioner's appellate counsel's failure to raise the weak and likely unsuccessful claim of denial of severance did not amount to ineffective assistance of appellate counsel under Strickland. Petitioner is not entitled to federal habeas relief on this claim. See 28 U.S.C. § 2254(d).

b.    Improper Admission of Hearsay

Co-defendant Caris's girlfriend, Stacy Kinner, testified at trial that she received a phone call from Caris on the night of Farfan's murder. Kinner testified that during the phone call, Caris told her that he was calling from a phone booth and that he loved her. Petitioner contends that he was denied effective assistance of appellate counsel for counsel's failure to raise the claim that Kinner's testimony should have been excluded on hearsay grounds.

In order to obtain habeas relief on the basis of an evidentiary issue, a petitioner must show that the error was one of constitutional dimension and that it was not harmless error. Dillard v. Roe, 244 F.3d 758, 767  n.7 (9th Cir. 2001). The admission of evidence at trial is not subject to habeas review unless a specific constitutional guarantee is violated or the error is of such a magnitude that the result is a denial of a fundamentally fair trail guaranteed by due process.

16

See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999).  Only if there are no permissible inferences that a jury may draw from the evidence can its admission violate due process.  See Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  In order to establish that the admission of evidence was not harmless error, petitioner would have to show that the error had a substantial and injurious effect or influence on the verdict.  Dillard, 244 F.3d at 767 n.7 (citing Brecht, 507 U.S. at 637).

The admission of Caris's hearsay statement to Kinner was addressed by the Santa Clara County superior court during petitioner's state habeas proceedings.  The superior court determined that petitioner's assertion that the trial court abused its discretion in admitting Caris's statements to Kinner was without merit. The court noted that Caris's statements to Kinner fell within the co-conspirator's exception to the hearsay rule under California Evidence Code section 1223.  Pet. Exh. E at 5.  Under section 1223, a co-conspirator's statements can be admitted under an exception to the hearsay rule if: (1) declarant was participating in a conspiracy at the time of the declaration, (2) that the declaration was in furtherance of the objective of that conspiracy, and (3) at the time of the declaration, the party against whom the evidence is offered was participating or would later participate in the conspiracy.  Cal. Evid. Code § 1223.   The superior court also noted that if Caris's statement was not admissible as a statement of a co-conspirator, it was admissable as nonhearsay as circumstantial evidence of Caris's state of mind.  The superior court reasoned that Caris's statement was relevant to prove that Caris was in a "worried state of mind in the moments before the murder."  Pet. Exh. E at 6.

For purposes of habeas review, this court need not determine whether or not the evidence was properly admitted under a co-conspirator exception or other

exception to the hearsay rule because petitioner cannot show that the evidence had a prejudicial effect on the verdict. Under <u>Brecht</u>, petitioner must show that the trial court's admission of Caris's statements had a substantial and injurious effect on the verdict. <u>Brecht</u>, 507 U.S. at 637. Caris's statements to Kinner that he was at a phone booth and that he loved her in no way implicate petitioner in a conspiracy to murder Farfan. Additionally, other evidence against petitioner strongly supports the jury's verdict. Noting the substance of the statements made to Kinner and the other evidence implicating petitioner, it is clear that had the trial court excluded Caris's statements to Kinner on hearsay grounds, the jury verdict would remain unchanged. Thus, even if the trial court erred in admitting Caris's statements to Kinner, this error was harmless error and would not support federal habeas relief.

Petitioner's claim of ineffective assistance of appellate counsel for failure to raise the hearsay claim on appeal is without merit. For essentially the reasons that the admission of Caris's statements to Kinner did not have a substantial or injurious effect on the jury verdict, appellate counsel's failure to raise the issue on appeal did not result in prejudice under <u>Strickland</u>. It simply cannot be said, in light of the substance of the statements made to Kinner and the other evidence implicating petitioner, that there is a reasonable probability that petitioner would have prevailed on appeal had counsel raised the hearsay claim. <u>See</u> <u>Miller</u>, 882 F.2d at 1434 n.9. Petitioner is not entitled to federal habeas relief on this claim. <u>See</u> 28 U.S.C. § 2254(d).

      c.    <u>Insufficiency of the Evidence</u>

Petitioner claims that his post trial counsel was ineffective for "failing to competently and diligently argue" the issue of insufficiency of the evidence. Petitioner's post trial counsel filed a motion to challenge the verdict

based on insufficiency of the evidence but did not make an oral argument to the court on the motion.  Petitioner claims that post trial counsel's failure to advocate orally the claim of insufficient evidence denied the trial court the ability to base its decision regarding the motion on the "totality of the evidence."  Pet. at 70.  Here, petitioner specifically claims ineffective assistance of appellate counsel for failure to raise on appeal post trial counsel's alleged incompetence.

Along with its decision to convict petitioner for first degree murder, the jury found true two overt acts that defined petitioner and co-defendant's role in the conspiracy to commit murder.  The jury found overt act six to be true, which stated that petitioner traveled with Farfan to Watson Park.  The jury also found overt act seven to be true, which stated that Farfan was ambushed and shot to death at Watson Park by petitioner and co-defendant.  Noting the jury's findings for the overt acts, petitioner claims that the jury found true that petitioner traveled to Watson Park with Farfan alone and that petitioner and Caris killed Farfan at the Park.  Petitioner considers the jury's findings a "defective verdict" that misapplied the law and evidence presented to the jury at trial.  Pet. at 78.

A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, which if proven, entitles him to habeas relief.  See Jackson v. Virginia, 443 U.S. 307, 321 (1979).  A federal court "determines only whether 'after viewing the evidence in the light most favorable to the prosecution, any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992) (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may a writ of habeas corpus based on insufficiency of

1    the evidence be granted.  See Jackson, 443 U.S. at 324.

2        The Santa Clara County superior court addressed petitioner's claim in the

3    state habeas proceedings.  The superior court explained that petitioner

4    misunderstands overt act six, which defines petitioner's role in the conspiracy.

5    The failure to mention Caris's presence in overt act six is of no importance

6    because overt act six merely charges petitioner as part of the conspiracy for

7    committing the overt act of driving the victim to the place of the murder.  Pet.

8    Exh. E at 6.  The court reasoned that the jury's refusal to find the various other

9    overt acts true simply reflects the jury's determination that the murder was not

10   gang-related, which does not foreclose the possibility that the murder was still a

11   conspiracy between petitioner and Caris.  See id.  The court concluded that there

12   was no ineffective assistance of counsel because the trial court did not err in

13   denying the motion to set aside the verdict on insufficiency of the evidence

14   grounds.  See id. at 7.

15       The superior court's determination that the jury's findings were not

16   inconsistent and were supported by the evidence is not unreasonable.  A rational

17   trier of fact could have found from the evidence that petitioner and Caris

18   conspired to kill Farfan, and that petitioner's involvement in the conspiracy was

19   defined by his overt act of driving Farfan to Watson Park.  See Jackson, 443 U.S.

20   at 319.  In addition, physical evidence tied petitioner to the murder, and petitioner

21   admitted to being at Watson Park at the time of the murder.  A rationale trier of

22   fact certainly could have interpreted the evidence in a way consistent with the

23   jury verdict; consequently, it is unlikely that a motion to set aside the verdict on

24   insufficiency of the evidence grounds would have been granted.

25       Petitioner is not entitled to federal habeas relief on his ineffective

26   assistance of appellate counsel claim.  The state court's rejection of the claim was

27

28                                          20

not objectively unreasonable.  See 28 U.S.C. § 2254(d).  It simply cannot be said that there is a reasonable probability that petitioner would have prevailed on appeal had counsel raised the insufficiency of the evidence claim.  See Miller, 882 F.2d at 1434 & n.9.

        d.    Prosecutorial Misconduct for the Knowing Use of Perjured Testimony

Petitioner claims that the prosecution knowingly used the perjured testimony of Jerry Salazar in their case against petitioner and co-defendant Caris.  Jerry Salazar, a member of the Nuestra Familia prison gang, testified that Chente Arroyo, another Nuestra Familia member, had put a "green light" out on Farfan for Farfan's failure to send profits from his drug sales to gang members in prison.  Petitioner claims that Salazar's testimony was perjured and introduced inflammatory gang evidence into trial.  Petitioner contends that his right to a fair trial and due process were violated by the prosecution's knowing use of perjured testimony.  In his habeas petition, petitioner claims ineffective assistance of appellate counsel for failing to bring the prosecutorial misconduct claim on appeal.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's [conduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process." Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995).  Federal habeas relief for claims of prosecutorial misconduct is appropriate only if the misconduct has a

21

substantial and injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 637.

When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such a conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. United States v. Agurs, 427 U.S. 97, 103 (1976). The same result occurs when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears. Napue v. Illinois, 360 U.S. 264, 269 (1959). However, mere inconsistencies in testimony do not establish knowing use of perjured testimony. United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir. 1992) (prosecutorial misconduct claim denied because defendants failed to show that prosecutor knew which of the inconsistent statements by witness were true or false). Contradictions and changes in witness's testimony do not alone constitute perjury and do not create an inference, let alone prove, the prosecutor knowingly presented perjured testimony. Tapia v. Tansy, 926 F.2d 1554, 1563 (9th Cir. 1991).

The California Court of Appeal gave a reasoned opinion addressing the prosecutorial misconduct for the use of perjured testimony given by Jerry Salazar on a claim brought by petitioner's co-defendant Caris. The Santa Clara County superior court, reviewing petitioner's habeas claims, adopted the reasoning of the court of appeal in denying petitioner's claim of ineffective assistance of appellate counsel for failure to raise prosecutorial misconduct on appeal. This court will review the court of appeal's reasoning to determine if the superior court's denial of petitioner's claim was contrary to, or an unreasonable application of, controlling federal law.

According to the trial record and facts cited in the court of appeal opinion,

Salazar testified for the prosecution that a "green light" was put out on Farfan by members of the Northern Structure prison gang. Salazar's testimony regarding the "green light" was consistent with his grand jury testimony. On cross-examination, defense counsel played an audiotape of an interview of Salazar conducted by police and deputy district attorneys in June 1993 (before Farfan's murder). After reading a transcript of the audiotape, Salazar agreed that the tape recording would supersede his testimony. Defense counsel then played a portion of the tape and questioned Salazar about its contents. The relevant portion of the transcript of the audiotape stated that Salazar said the following: "and . . . after that [Arroyo] was mad and he said, well, you know what? I want a green light on Manuel Nanez, send word to Jessica to tell Far, tell Farfan to put a green light on Manuel Nanez."

Petitioner claims that Salazar committed perjury by testifying before the grand jury and at trial that a "green light" had been put out on Farfan and Nanez, because his June 1993 interview stated that a "green light" had been put out on Nanez to be executed by Farfan. Petitioner contends that because representatives of the District Attorney's office were present during the June 1993 interview, that the prosecutor had knowledge of Salazar's perjury and used the perjured testimony to convict petitioner. Petitioner argues that admission of the perjured testimony by Salazar rendered his trial fundamentally unfair because the testimony introduced evidence of gang conspiracy and highly inflammatory gang evidence.

The California Court of Appeal found that the record established only that Salazar made inconsistent statements before he testified, which defense counsel fully exposed in cross-examination. The court explained that Salazar's testimony was not the only gang conspiracy evidence. People v. Caris, No. H018246, 2002

Cal. App. Unpub. LEXIS 1767, *25 (Cal. Ct. App. May 31, 2002).  Prosecution witness and gang member Avila testified that Caris bragged to him that he had killed Farfan for "messing with" Jessica Salazar, Jerry Salazar's wife.  Id. Additionally, the prosecution put forth evidence that sleeping with a gang member's wife was an act of disrespect that could generate a green light.  Id.

The California Court of Appeal decision was not contrary to, or an unreasonable application of, controlling federal law.  See 28 U.S.C. § 2254(d). Petitioner did not establish that Salazar's testimony amounted to perjury. Inconsistencies in testimony and contradictions or changes in testimony do not alone constitute perjury.  See Sherlock, 962 F.2d at 1364; Tapia, 926 F.2d at 1563.  Nor does petitioner present any evidence to establish that the prosecution knowingly presented false testimony, besides the audio-taped interview in which Salazar gives statements that are different from his grand jury and trial testimony. To prove misconduct by the government, petitioner must establish a factual basis for attributing knowledge that the testimony given was perjured.  See Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004).  The mere fact of inconsistent or contradictory testimony does not itself establish that a prosecutor knowingly presented perjured testimony.  Tapia, 926 F.2d at 1563.

Petitioner also claims that use of Salazar's testimony rendered his trial fundamentally unfair because the testimony introduced gang evidence that would not have been presented otherwise.  However, as noted by the California Court of Appeal, the record contains other evidence supporting the prosecution's theory of gang motive.  People v. Caris, 2002 Cal. App. Unpub. LEXIS 1767, *25. Additionally, the superior court correctly noted in its denial of petitioner's habeas claims that the gang enhancements were rejected by the jury, exhibiting the jury's rejection of the prosecution's gang motive theory.

Petitioner is not entitled to federal habeas relief on his ineffective assistance of appellate counsel claim.  The state court's rejection of the claim was not objectively unreasonable.  See 28 U.S.C. § 2254(d).  It simply cannot be said that there is a reasonable probability that petitioner would have prevailed on appeal had counsel raised the prosecutorial misconduct claim for knowing use of perjured testimony.  See Miller, 882 F.2d at 1434 & n.9.

e.      Brady Violation

Petitioner claims that the prosecution exhibited misconduct for knowingly withholding exculpatory evidence from defense counsel regarding Salazar's false testimony.  Petitioner asserts that the prosecution gave defense counsel the audio-taped interview between police, district attorneys and Salazar, but that the tape was inaudible and transcript contained omissions.  Petitioner argues that this withholding of evidence by the prosecution amounted to a Brady violation.  See Brady v. Maryland, 373 U.S. 83 (1963).  Petitioner's habeas petition asserts a claim of ineffective assistance of appellate counsel for failing to raise the Brady violation claim on appeal.

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of good faith or bad faith of the prosecution."  373 U.S. at 87.  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  United States v. Bagley, 473 U.S. 667, 682 (1985) (plurality opinion).  To establish a Brady violation, petitioner must show that the exculpatory or impeaching evidence was suppressed by the state, either wilfully or inadvertently, resulting in prejudice.  Morris v. Y1st, 447 F.3d 735, 743 (9th Cir. 2006).

25

Petitioner's <u>Brady</u> violation claim was not addressed on appeal by the California Court of Appeal, nor was it addressed in a reasoned opinion on state habeas review.  When there is no reasoned state court decision on a petitioner's habeas claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law.  <u>See</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner has not shown that the prosecution withheld any evidence from defense counsel.  If the government turns over all information necessary for defense to discover the alleged <u>Brady</u> material on its own, the government is not guilty of suppressing evidence favorable to the defendant.  <u>See</u> <u>United States v. Bracy</u>, 67 F.3d 1421, 1428-9 (9th Cir. 1995).   The record shows that the prosecution gave defense counsel the audiotapes and corresponding transcripts.  Although petitioner claims the tape was inaudible and the transcript contained omissions, defense counsel was able to extract from the evidence Salazar's inconsistent statements in order to impeach him upon cross-examination.  Petitioner puts forth no evidence that the prosecution had access to audiotapes or transcripts of the interview with Salazar that were in better condition and less defective than those given to defense counsel.

Even if petitioner could show that the prosecution suppressed evidence by giving defense counsel evidence that was defective, petitioner has not shown prejudice.  Defense counsel was able to extract from the audiotape and transcripts of the interview with Salazar that he made inconsistent statements, allowing defense counsel to impeach Salazar on the stand.  Petitioner cannot show that the defective audiotape prevented defense counsel from being able to present evidence that would have changed the result of the proceeding and undermined

1     confidence in the verdict.  Bagley, 473 U.S. at 682.

2          Petitioner is not entitled to federal habeas relief on his ineffective

3     assistance of appellate counsel claim.  The state court's rejection of the claim was

4     not objectively unreasonable.  See 28 U.S.C. § 2254(d).  It simply cannot be said

5     that there is a reasonable probability that petitioner would have prevailed on

6     appeal had counsel raised the Brady violation claim.  See Miller, 882 F.2d at

7     1434 & n.9.

8                    f.      Prosecutorial Misconduct for Knowingly Presenting a False
                             Theory of Guilt Based on False Testimony
9
                    Petitioner claims that the prosecution knowingly presented a
10
     false theory of guilt based on Jerry Salazar's false testimony that there was a
11
     "green light" out on Farfan at the time of his murder.  Petitioner claims
12
     ineffective assistance of appellate counsel for failure to bring this false theory
13
     claim on appeal.
14
          Petitioner's assertion that the prosecution exhibited misconduct by
15
     knowingly presenting a false theory of guilt is based on the assumption that
16
     Salazar's testimony was perjured.  As stated above, petitioner has not shown that
17
     Salazar's testimony amounted to perjury and was not merely inconsistent with his
18
     prior interview statements.  Additionally, petitioner has not shown that the
19
     prosecution had knowledge of the false testimony on the part of Salazar.
20
     Petitioner cannot establish the claim of prosecutorial misconduct for knowingly
21
     presenting a false theory of guilt.
22
          Petitioner is not entitled to federal habeas relief on his ineffective
23
     assistance of appellate counsel claim.  The state court's rejection of the claim was
24
     not objectively unreasonable.  See 28 U.S.C. § 2254(d).  It simply cannot be said
25
     that there is a reasonable probability that petitioner would have prevailed on
26
     appeal had counsel raised the prosecutorial misconduct claim.  See Miller, 882
27

28                                               27

F.2d at 1434 & n.9.

g.   Cumulative Error

Petitioner claims that cumulative error by the trial court amounted to prejudice that rendered petitioner's trial fundamentally unfair.  He also claims ineffective assistance of appellate counsel for failure to raise on appeal the cumulative error claim.

The Ninth Circuit has had that the cumulative effect of several trial errors may prejudice a defendant so much that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003); Thomas v. Hubbard, 273 F.3d 1164, 1179-81 (9th Cir. 2002).  However, it has also held that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation.  See Mancuso v. Oliveraz, 292 F.3d 939, 957 (9th Cir. 2002); Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).  It does not appear that a single constitutional error exists here.  Regardless, habeas relief is not in order because this is not one of the exceedingly rare cases in which the cumulative effect of the alleged trial errors so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Cf. Alcala, 334 F.3d at 893-95 (reversing a conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution); Thomas, 273 F.3d at 1179-81 (reversing conviction based on cumulative prejudicial effect of (a) admission of triple hearsay statement providing only evidence that defendant had motive and access to murder weapon; (b) prosecutorial misconduct in disclosing to the jury that the defendant had committed prior crime with use of firearm; and (c) truncation of defense cross-examination of police officer, which prevented defense from adducing evidence that someone else may have committed the crime and evidence casting doubt on credibility of main prosecution witness).

Petitioner is not entitled to federal habeas relief on his claim of cumulative error/prejudice. <u>See</u> 28 U.S.C § 2254(d).

## CONCLUSION

After a careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of the respondent and close the file.

IT IS SO ORDERED.

Dated:  July 26, 2006

_____
CHARLES R. BREYER
United States District Judge

29